RUTHVEN BROTHERS, Appellants, v. C. E. CLARKE, Garnishee, HOME SAVINGS & TRUST COMPANY, Intervener.

**Garnishment: FIXES STATUS:** *Unaccepted order.* Where a claim due a debtor, who has drawn an order therefor payable to a certain person for the benefit of one creditor, is garnished by another creditor, the rights of the parties are then fixed, and cannot be affected by the former creditor subsequently ratifying the acceptance of the order by the payee who had no authority to accept it.

**Evidence:** ORDER FOR MONEY: *Circumstances.* Where a debtor gives an order for an amount due him, payable to an agent of the creditor evidence of the circumstances of the transaction and the conversation of the parties is admissible to show that he intended to transfer the amount of the order to his creditor.

DEPOSITIONS: *Copies attached, secondary evidence.* Neither Code 1873, section 3736, requiring that all exhibits produced on taking a deposition, or proved or referred to, by any witness, or correct copies thereof, shall be attached to and returned with the deposition, nor Code, section 4700, requiring only copies to be so attached and returned, makes such copy admissible as evidence in lieu of the original, when the latter is in the possession of the party introducing the copy, and no reason for not producing the original is shown.

INCOMPETENCY: *Harmless error.* The admission of incompetent evidence of a fact which is shown by competent evidence is not prejudicial.

SAME. A copy of a resolution of a board of corporate directors is inadmissible when no reason is shown for not producing the original.

**Agency:** PROOF OF. Any one having personal knowledge of the relation of principal and agent may testify thereto.

AUTHORITY OF AGENT. An agent authorized by a creditor to receive such an amount as the debtor may be able to pay has authority to take an order for money about to become due the debtor.

**Fraudulent Conveyance:** PARTICIPATION. The fact that a debtor assigns a claim due him to one of his creditors with intent to defraud another creditor will not invalidate the assignment, where the former creditor does not share in the wrongful intent.

EVIDENCE: *Admissibility.* A creditor having garnished an amount due his debtor, another creditor intervened, claiming such an amount under an assignment, which the garnishment creditor claimed was made to defraud him. A letter was offered, written five months after the assignment by the debtor to the intervening creditor, requesting him to send a power of attorney to his agent to appear in the garnishment proceeding, as with that power the money could be held all right and testimony of the intervening creditor was excluded to the effect that by taking the assignment he did not intend to abandon a mortgage he held against the debtor, which he considered sufficient, nor did he understand that the assignment was made to defeat other creditors. *Held,* that such evidence was inadmissible, it not appearing that the intervening creditor knew of any wrongful intent of the debtor.

SAME. An order drawn by a debtor directing an amount due him to be applied on the claim of a creditor is valid as against another

creditor, though no credit was given for the order, and no exten-
sion of time was granted the debtor being solvent, and having
proper.y from whi h the second creditor can satisfy his claim.

*Appeal from Palo Alto District Court.*—HON. W. B. QUAR-
TON, Judge.

SATURDAY, MAY 27, 1899.

GARNISHMENT proceedings by a judgment creditor. The
answers of a garnishee were taken, a petition of intervention
was filed, to which the judgment creditor filed an answer,
there was a trial by jury, and a verdict and judgment for
the intervenor.   The judgment creditor appeals.—*Affirmed.*

*McCarty & Linderman* and *B. E. Kelly* for appellant.

*E. C. Rowell* and *John Menzies* for appellee.

ROBINSON, C. J.—On the sixteenth day of March, 1897,
C. E. Clarke, the garnishee, was owing W. H. McCune three
hundred dollars, and the latter was owing more than that
amount on an unsatisfied judgment rendered in favor of and
owned by Ruthven Bros.   Before 10 o'clock in the morning
of the day specified, McCune drew and delivered an order, a
copy of which is as follows: "Ruthven, Iowa, March 16th,
1897.  To C. E. Clarke, P. M.: You will pay to F. H. Gid-
dings the three hundred dollars due April 1st on post-office
outfit for the purpose of paying on certain loan in the Home
Savings & Trust Co. of Des Moines, Iowa.  W. H. McCune."
A few minutes after 10 o'clock of the same morning Clarke
was garnished under an execution issued on the judgment of
Ruthven Bros.   The Home Savings & Trust Company filed a
petition of intervention, in which they claimed the amount
due from the garnishee by virtue of the order to apply on an
indebtedness for more than three hundred dollars, evidenced
by the promissory note of McCune and his wife.   Ruthven
Bros. denies that the order was effectual to assign the amount

due from Clarke, and alleges that the pretended sale or assignment of that amount was without consideration, and made to hinder, delay, and prevent the collection of the plaintiff's debt; that McCune and Giddings conspired together fraudulently to place the money about to become due from Clarke beyond the reach of the plaintiff; and that at the time of the transaction Giddings was not authorized to accept the order for the intervener.

I.   The court permitted McCune and Giddings to testify respecting the circumstances under which the order was drawn and delivered, and the conversation they had at that time.   The purpose of the testimony was to show that Giddings was the agent and local treasurer of the defendant; that McCune said he might not be in Ruthven when the money which Clarke owed became due, and he wished to give Giddings an order to collect the money, and "turn it in" to the intervener, as he was its local treasurer.  McCune testified that he stated at the time that he wished to transfer his account against Clarke to the intervener, and that the order was given to accomplish that purpose. We are of the opinion that the evidence was properly admitted.   The relation of principal and agent is a condi-tion of which any one having personal knowledge may testify. *Huesinkveld v. Insurance Co.,* 106 Iowa, 229.   It did not appear that the authority of Giddings was in writing, and the testimony respecting his agency was not objectionable on any of the grounds stated.   It was not necessary that the entire transaction involved in the transfer of the amount owed by Clarke be shown by the order, but it was competent to prove the circumstances of the transaction, and the intent of the parties to it, by other evidence.   *Moore v. Lowrey,* 25 Iowa, 336; *McWilliams v. Webb,* 32 Iowa, 577; *Metcalf v. Kincaid,* 87 Iowa, 443.

II.   It is said that the evidence failed to show an assignment before the garnishment was effected.   There was evidence which tended to show that prior to the transaction

in question McCune had correspondence with the intervener concerning payment of the amount due the intervener, and the latter had authorized Giddings to receive such sums as McCune could pay; that after the order was drawn, and before the garnishment was effected, McCune informed Clarke that the claim against him had been assigned to Giddings as agent for the intervener, and that the assignment was for the benefit of the intervener. It was said in *McWilliams v. Webb, supra,* that, "where an order is drawn for the whole of the fund, it operates as an equitable assignment of it, after notice of the drawee, and it becomes his duty to accept." See, also, *Metcalf v. Kincaid, supra.* We are of the opinion that the jury was authorized by the evidence to find that an assignment of McCune's claim against Clarke had been effected before the latter was garnished.

III. The intervener was permitted to read in evidence copies of the note and mortgage given to it by McCune and wife, which represented the indebtedness on account of which the order in controversy was given. The copies were attached to a deposition of E. C. Spinney, the secretary and manager of the intervener, and a statement of the officer who took the deposition shows that the originals were produced, and that they were copied, and copies thereof attached to the deposition. Section 3736 of the Code of 1873, in force when the deposition was taken, provided that "all exhibits produced before the person taking the depositions or proved or referred to by any witness, or correct copies thereof, must be appended to the depositions and returned with them, unless sufficient reason be shown for not so doing." That provision did not purport to make competent as evidence anything which before was incompetent, and the same is true of section 4700 of the Code. A party to an action may have a right to demand the production of an original instrument which his adversary seeks to prove, notwithstanding the fact that a copy of it is attached to a deposition intro-

duced in evidence. The copy may be necessary to a full under-
standing of the testimony of the witness who refers to it; and
where the owner of the original, because of its value, and the
danger of loss, or for the reason that it is needed for other
uses, or for any other sufficient cause, declines to have it
attached to a deposition, a copy may be the means of identify-
ing the original when it is regularly offered on the trial of the
cause. The case of *Bullis v. Easton,* 96 Iowa, 513, although
not precisely in point, has an important bearing on the
question under consideration for the reason that it involved
the use of copies of letters, which were produced by a witness
who was beyond the jurisdiction of this state, for use in con-
nection' with her deposition, which was taken in another
state. It was held that, as the witness refused to attach the
originals to her deposition, and as the party who desired to
prove their contents could not obtain them, copies were
admissible. But in this case the originals were in the pos-
session of the intervener, who offered the copies, and no
reasons for failing to produce the originals were shown.
As we understand the record, the copies were not offered as
preliminary proofs of the originals, or to identify them as
the instruments to which the witness had referred, but as
proof of the originals, and in lieu of them. The plain-
tiff objected to the use of the copies as evidence, and
we are of the opinion that they should not have been
received in lieu of the originals. The plaintiff could not,
however, have been prejudiced by them, for the reason that
the indebtedness was shown by competent evidence.

IV. The appellant complains of the refusal of the
court to allow questions asked by it on the cross-examination
of McCune and Giddings to show that the giving of the order
in controversy was for the purpose of delaying and defraud-
ing the plaintiff. Giddings was a son-in-law of McCune, and
both resided in Ruthven. The order was drawn but a short
time before the train on which the sheriff with the execution
against McCune arrived in Ruthven was due. McCune was

asked whether he did not have the conversation with Giddings and arrange with the latter to collect the order, by reason of the fact that he knew that the execution had been issued. In response to an objection by the intervener the court stated that, if counsel for the plaintiff would state that they expected to show that the intervener or its agent knew, or had reason to know, that the execution had issued, he would permit an answer to the question; but, as no statement to that effect was made, the objection was sustained. Similar rulings were made on objections to similar questions. We think the rulings, if incorrect, could not have been prejudicial. The knowledge possessed by McCune when the order was drawn, and his intent in giving it, would not have affected the intervener if it did not share in the wrongful intent, and we do not find that it did.

V. The appellant contends that the district court erred in refusing to receive in evidence a letter marked "Exhibit D," a copy of which is as follows: "Ruthven, Iowa, April 22, 1897. (Send no copy of this.) E. C. Spinney, Esq., Des Moines, Iowa—Dear Sir: Your letter, as requested, is received, and is what we want. Now, we want another letter from you, something like the following: 'April 22, 1897. F. H. Giddings, Ruthven, Iowa—Dear Sir: We learn through Mr. McCune that the delay in the matter of paying all or part of the loan spoken of in a former letter, viz. that of his wife, has been caused by garnishment proceedings. You are hereby authorized to appear in our interests as our agent. And you are given full power of attorney to act for us in this case in the dist. court of Palo Alto county. [Signed] ———.' The above seems to be wanting in order that, if the claim is set up Fred has no power to act in this matter, to set it at rest. There will be no expense to you in the matter, and, fortified with this power of attorney, we can hold the money all right. I will come to Des Moines soon, and can tell you better than to write, and can then

thank you personally for these favors. Very respy., W. H. McCune. Send the reply to Fred or to me." Complaint is also made of the refusal of the court to permit the answers made by Spinney to certain cross interrogatories which tended to show that the intervener regarded the security it held on account of the McCune loan as sufficient, that the intervener had not intended to abandon that security, and that it was not the understanding of the intervener that its action in the matter in controversy was taken for the purpose of defeating the creditors of McCune in the collection of their claims. Had there been any evidence which tended to show that the intervener, through Spinney, Giddings, or any other agent, had knowledge of the alleged fraudulent purposes of McCune in giving the order, or that there had been collusion on the part of the intervener, the letter and the answers to the questions referred to should have been received. But there is nothing in the record to show such collusion, and nothing which tends to show that the intervener had any knowledge of the alleged wrongful intent of McCune. There is nothing to show that the intervener did anything to encourage the letter of McCune, nor that any action was taken upon it. The letter, it will be noticed, was written five weeks after the order was given. It may have been inspired by the desire of McCune to have the order upheld in order to release to that extent the mortgaged property, but it was not, alone, evidence of any wrong on the part of the intervener.

VI. The intervener was permitted to introduce in evidence a copy of a resolution adopted by its board of directors in October, 1897, which, in terms, ratified and approved the action of Giddings in accepting the order in suit, and directing that, when collected, it should be credited on the McCune note. The copy should have been excluded on the objection of plaintiff, as no reason was shown for not introducing the original, and because the rights of the

respective parties in interest were fixed at the time garnishment was accomplished and could not be changed by subsequent action on the part of the intervener. But we are of the opinion that the evidence of the resolution received could not have been prejudicial, for the reason that other and uncontradicted evidence showed that Giddings was authorized by the intervener "to receive such amount" as the McCunes were able to pay on their loan. To take an order for the money about to become due to McCune was within the scope of the power conferred upon Giddings two weeks before the order was delivered. It is true that credit for the order was not given when it was received, and that until paid it was held, in a sense, as additional security; but it was a legitimate method of collecting money to apply on the debt, and, as between the parties to the transaction, the existence of the debt was a sufficient consideration for the order. Whether, in view of the fact that credit was not given for it, and that no extension of time was granted on account of it, the order would have been void as against creditors under any circumstances, we need not determine. It was good, even without a valuable consideration, as against persons not prejudiced by it; and it is not shown that McCune is insolvent, nor that the plaintiff cannot satisfy its claim from other property yet held by him. It is claimed that, as Giddings was the local treasurer of the intervener, he was made the agent of McCune by a certain provision of the by-laws of the intervener; but the authority of Giddings to take the order was not derived from his office of local treasurer as fixed by the by-law referred to, but by direct authority from the manager of the intervener.

VII. The conclusions announced dispose of the controlling questions in the case. As there was no evidence of fraud on the part of the intervener, it was not necessary to submit the question of fraud to the jury. Other questions discussed by counsel are not of sufficient importance to justify

special mention. The evidence sustains the verdict. We do not find that prejudicial error was committed by the district court, and its judgment is AFFIRMED.